RECEIVED
MAY 14 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| B J SERVICES CO, USA, | : | DOCKET NO. 6:08-510 |
| VS. | : | JUDGE TRIMBLE |
| EDDIE A. THOMPSON, ET AL | : | MAGISTRATE JUDGE KAY |

### TRIAL OPINION

Before the Court is the disposition of plaintiff, BJ Services Co., USA's ("BJ Services") declaratory judgment action pursuant 28 U.S.C. § 2201. BJ Services seeks to have the Court declare that it is not liable to defendant, Eddie Thompson[1] for defense or indemnity or insurance coverage arising out of an accident which took place on November 18, 2004.

On November 18, 2004, BJ Services was performing a coil tubing job for Conn Energy, Inc. ("Conn") pursuant to a Master Service Agreement ("MSA"). Conn is a company that owns offshore properties which includes East Cameron 229. The purpose of the job was to increase the production of the two wells located on the East Cameron 229 platform.

Conn retained Ken Crawford and/or Excalibur Technology Corporation ("Excalibur"). Excalibur provides on-site supervision of oil and gas well workovers and drilling operations and in-house engineering. Excalibur retained Eddie Thompson, as the "company man" to oversee the operations for Conn.

Conn contracted with Offshore Marine Contractors, Inc. ("OMC") to provide a lift boat, the

---

[1] Lexington Insurance Company is the insurer of Thompson.

L/B KAITLYN EYMARD, which provided a necessary crane and contained living quarters.

On November 18, 2004, Bruce Lemelle, an employee of BJ Services, was attempting to move a blow out preventer ("BOP") stack from the heliport deck of the platform to a well head located on a lower level of the platform. Because of the weight of the BOP stack, the crane aboard the KAITLYN EYMARD was utilized. Timothy DeSalvo, an employee of OMC was the crane operator. During the lift, Mr. Lemelle was hit by the BOP stack causing him various injuries.

Mr. Lemelle filed suit against Conn, Mr. Thompson,[2] OMC and Mr. DeSalvo in the matter entitled *Bruce Lemelle and Ramona Lemelle v. Conn Energy, et al.*[3] Pursuant to its MSA with BJ Services, Conn demanded and received defense and indemnification from BJ Services.

Subsequently, OMC, demanded defense and indemnity from BJ Services by virtue of the MSA between and Conn and BJ Services. BJ Services refused to defend and indemnify OMC. OMC filed a motion for summary judgment requesting that the court rule that BJ Services owed defense and indemnity to OMC under the MSA between BJ Services and Conn. Even though OMC had executed its own MSA with Conn, that agreement was not referenced or relied upon in OMC's motion. OMC relied exclusively on the MSA between BJ Services and Conn. Prior to the court's ruling, Lemelle settled with BJ Services, Conn and OMC.

Ed Thompson and Excalibur are the last defendants against whom Lemelle brought a tort action. Thompson demanded defense and indemnity from BJ Services based on his status of being a member of the "Company Group" referenced in the MSA between Conn and BJ Services.

---

[2] Excalibur Technology Corporation hired Ed Thompson as the "company man" or representative for Conn. As a result of an insurance contract for the benefit of Excalibur, Lexington provided defense and indemnity to Thompson.

[3] Docket No. 05-2229, Western District of Louisiana with Judge Wilson presiding.

Lexington Insurance Company ("Lexington"), on behalf of Thompson thereafter settled with Lemelle for the sum of $575,000.00.

The following stipulations have been made by the parties:

1. There was no written master service agreement or contract between Conn Energy, Inc. and Excalibur Technology Corp.
2. There was no written master service agreement or contract between Conn Energy and Eddie Thompson.
3. There was no written master service agreement or contract between B.J. Services and Excalibur Technology Corp.
4. There was no written master service agreement or contract between B.J. Services and Eddie Thompson.
5. There was no master service agreements between Excalibur Technology Corp. and Eddie Thompson.
6. Excalibur Technology Corp. did not pay a premium for an additional insured endorsement for Conn Energy or B. J. Services or Eddie Thompson.
7. Excalibur Technology Corp. did not receive payment for a premium from Conn Energy or B.J. Services Company or Eddie Thompson.
8. B.J. Services did not pay for an additional insured endorsement for Conn Energy, Excalibur Technology, or Eddie Thompson.
9. B.J. Services did not receive payment for a premium for an additional insured endorsement from Conn Energy or Excalibur Technology Corp. or Eddie Thompson.
10. Excalibur Technology Corp. prepared a work over plan for Conn Energy's East Cameron 229 fixed production platform which is located on the Outer Continental Shelf off of the coast of Louisiana.
11. B.J. Services was hired by Conn Energy to perform coil tubing operations on two wells located on East Cameron 229.
12. Eddie Thompson was hired by Excalibur Technology Corp. to supervise the operation as the "company man."
13. On November 18, 2004, B.J. Services was performing coil tubing work on East Cameron 229 for the purpose of improving the flow of the wells for increased production.
14. Bruce Lemelle was an employee of B.J. Services on November 18, 2004.
15. On November 18, 2004, Bruce Lemelle sustained injuries as a result of an accident while on East Cameron 229 during the course and scope of his employment.
16. Bruce Lemelle brought suit in the United States District Court, Western District of Louisiana, Lake Charles Division under docket number 2:05CV2229, against Conn Energy, Offshore Marine Contractors, Inc. and Eddie Thompson.
17. Bruce Lemelle settled with Conn Energy and Offshore Marine Contractors, Inc. on or before June 19, 2007.
18. Lexington Insurance Company, pursuant to its insurance contract with Excalibur

               Technology Corp., provided a defense to Eddie Thompson.
19.    Lexington Insurance Company on behalf of Eddie Thompson settled with Bruce Lemelle for $575,000.00 on or shortly after July 19, 2007.
20.    On July 18, 2007, Lexington Insurance Company on behalf of Eddie Thompson tendered the defense of Eddie Thompson and the indemnity of Eddie Thompson to B.J. Services.
21.    The trial on the merits was scheduled for August 8, 2007.

Thompson and Lexington contend that they are entitled to defense and indemnity from BJ Services based on an indemnity agreement found in the MSA that was executed by BJ Services and Conn on August 7, 2002. BJ Services now seeks a judgment from this Court declaring that it does not owe indemnity and defense to Thompson and/or his insurer, Lexington.

*Which law applies?*

BJ Services' first defense is that because the contract significantly involved oil and gas production, maritime law would not apply. Hence, the first question that must be answered is what law governs the resolution of this contractual dispute. The work being performed by BJ Services for Conn was on a fixed production platform located on the Outer Continental Shelf off of the coast of Louisiana. Central to the issue is the application of the Outer Continental Shelf Lands Act ("OCSLA").[4] Therefore, the Court must determine whether the contract which is linked to offshore gas and oil production is governed by state or maritime law.

The OCSLA provides a non-maritime remedy and controls "the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures" erected thereon.[5] By its terms, the OCSLA must be "construed in such a manner that the character of the waters above the outer

---

[4] 43 U.S.C. § 1331, *et seq.*

[5] 43 U.S.C. § 1333(a)(2)(A).

4

Continental Shelf as high seas . . . shall not be affected."[6] Within the area covered by the OCSLA, federal law controls but the law of the adjacent State is adopted as surrogate federal law to the extent that it is not inconsistent with applicable federal laws or regulations.[7]

The intent behind the OCSLA is to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels, for purposes of defining the applicable law because maritime law was deemed inapposite to these fixed structures. [8]

The MSA was executed on behalf of Conn, which is located in Metairie, Louisiana, and BJ Services which is located in Houston, Texas. BJ Services maintains that the MSA is non-maritime in nature. BJ Services further posits that the contract should be interpreted under Louisiana law. If the Court were to find that the MSA is non-maritime and that Louisiana law should apply, the Louisiana Oilfield Indemnity Act[9] ("LOIA") would render the indemnity provision at issue unenforceable,[10] meaning that BJ Services would not owe defense and indemnity to Thompson and

---

[6] § 1332(2).

[7] § 1333(a)(2)(A).

[8] See *Rodrique v. Aetna Casualty & Surety co.,* 395 U.S. 352, 361-366, 89 S.Ct. 1835, 1840-1842 (1969).

[9] La.R.S.A. § 9:2780(a)

[10] La. R.S. 9:2780 was passed in response to the concern of oilfield contractors over the widespread inclusion of indemnification agreements in the master service contracts which oil companies require all contractors to sign. The indemnification provisions exposed contractors to both worker's compensation and tort liability.
\* \* \*
Section A of the Act states that the defense and indemnity provisions in certain contracts relating to the drilling industry are inequitable to some oilfield contractors. It declares that the intent of the legislature is to declare null and void and against public policy "any provision in any agreement which requires defense and/or indemnification for death or bodily injury to persons where there is negligence or fault (strict liability) on the part of the indemnitee..." *Meloy v.*

Lexington.

In *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*,[11] the court stated that in order to determine whether the OCSLA required state law to be applied as surrogate federal law, a three prong inquiry must be made based on the following: it must be found that (1) the controversy arises on a situs that is covered by the OCSLA, (2) federal maritime law does not apply of its own force, and (3) state law is not inconsistent with federal law. All of these conditions must be met in order for adjacent state law to apply as surrogate federal law under the OCSLA. BJ Services maintains that when applying this analysis, all of the conditions are met.

The first step of the analysis requires us to determine if the controversy arises on a situs covered by the OCSLA The most recent case, and one in which this Court will follow, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,*[12] held that if the matter is a contractual indemnity claim, as opposed to the underlying tort claim, then because the claim is based in contract rather than in tort, a focus-of-the-contract test must be applied. Under this test, a contractual indemnity claim arises on an OSCLA situs if a majority of the performance called for under the contract is to be performed on stationary platform(s) or other OCSLA situses enumerated in 43 U.S.C. § 1333 (a)(2)(A).[13]

The contract between Conn Energy and BJ Services was to perform coil tubing services in an effort to return to production two wells serviced by the fixed platform. The Court concludes that the indemnity dispute arose on an OCSLA situs because a majority of the work being performed was

---

*Conoco, Inc. v. Oilfield Services of Cameron, Inc.* 504 So.2d 833 (La. 1987).

[11] 895 F.2d 1043 (5th Cir. 1990).

[12] 589 F.3d 778 (5th Cir. 2009).

[13] *Seacore,* 589 F.3d at 787.

6

on the platform– a fixed platform on the Outer Continental Shelf ("OCS").

The second part of the test requires us to determine if maritime law applies of its own force. Hence, we must determine if the activity was maritime or non-maritime. Fifth Circuit jurisprudence dictates that the application of maritime law will be "precluded except in those cases where the subject matter of the controversy bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction."[14]

Defendants maintain that oilfield related services performed on the OCS are governed by maritime law where a vessel is inextricably intertwined with the oilfield service work being performed. Defendants note that the MSA mentioned that the use of a vessel could be required.[15] Defendants also remark that the work could not have been performed without the use of the vessel.

The principal obligation was to improve the production of oil and gas from wells located on the platform. The work being performed was on the platform itself, even though the crane that lifted the BOP was on a vessel. Testimony reveals that this particular job did not always require the use of a crane on a vessel, but that it was needed for this job because of the weight and size of the BOP. Mr. Lemelle was injured on the platform while attempting to lift the BOP from one area of the platform, the heliport, to another area of the platform. The fact that a vessel was being used to lift the BOP was incidental to the main focus of the contract which was to perform coil tubing services on the stationary platform. "It is fundamental that the mere inclusion of maritime obligations in a mixed contract does not, without more, bring non-maritime obligations within the pale of admiralty

---

[14] *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir. 1985).

[15] Lexington Exhibit 1. MSA between Conn Energy and BJ Services.

law."[16] Again, the principal obligation was to improve the production of the oil wells which required that a BOP be placed over the well head. This is not traditionally a maritime activity, but is peculiar to oil and gas exploration and production. Thus, the Court finds that the contract is not maritime in nature, and therefore maritime law does not apply of its own force.

The last condition has also been met as the Fifth Circuit has specifically held that "nothing in the LOIA is inconsistent with federal law."[17] Having determined that the three conditions set forth in *Union Texas Petroleum, supra* are met, then it follows that the adjacent state law of Louisiana will apply as surrogate federal law.

*Is the indemnity agreement void and unenforceable?*

Even though we have initially found that the LOIA applies, there is an exception to the LOIA's general rule that indemnity agreements are void and unenforceable. In *Patterson v. Conoco, et al,*[18] the court maintained a third-party's claim against the insurer, holding that the LOIA did not render invalid an agreement between the employer and a third party to provide liability insurance coverage at its own expense, which included injuries sustained by an employee. Under that agreement the employer of the injured plaintiff was required to provide insurance coverage indemnifying a third party. The agreement further provided that the indemnitee would reimburse the employer for the insurance premiums. The indemnitee produced evidence documenting its payments of these premiums over a period of approximately eighteen months. Based upon the evidence submitted in the record of the reimbursement, the court concluded that the agreement was

---

[16] *Laredo,* 754 F.2d at 1231-32.

[17] *Seacor,* 589 F.3d at 789. (Citations omitted)

[18] 670 F.Supp. 182 (W.D. La. 1987).

not void because the indemnitee had paid for its own insurance.

In *Marcel, et al v. Placid Oil Company*,[19] the Fifth Circuit, relying on *Patterson* and *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*,[20] adopted the exception created in *Patterson* as the law of this Circuit. The Court opined the following:

> The LOIA is aimed at preventing the shifting of the economic burden of insurance coverage or liability onto an independent contractor. If the principal pays for its own liability coverage, however, no shifting occurs. We see no need to prevent such an arrangement in order to give effect to the LOIA. Indeed, agreements such as the one in *Patterson* may be economically desirable in situations where it is less expensive for the independent contractor to add the principal as an additional insured than for the principal to obtain its own insurance on a particular operation.
>
> In approving this exception, however, we stress that the exception does not apply if any material part of the cost of insuring the indemnitee is borne by the independent contractor procuring the insurance coverage.

Thus, the court held that the LOIA would not void provisions in oilfield agreements for indemnification for losses where the indemnitee pays for its own insurance coverage.

In the instant case, Defendants maintain that as a member of the "Company Group"[21], they are owed insurance coverage by BJ Services. Defendants submit the MSA executed by BJ Services and Conn as evidence that the BJ Services' insurance policy would name the "Company Group" as additional insureds by the following language:

> All insurance policies of Contractor [BJ Services] (and its subcontractors, if any) in any way relating to any Work performed under this Agreements or the subject matter of this Agreement, including, but not limited to, those policies required hereunder, shall be endorsed specifically to include a waiver of subrogation against Company Group (as defined in Exhibits "A" and "B" and the Agreement), and Company Group

---

[19] 11 F.3d 563 (1994).

[20] 864 F.2d 1171 (5th Cir. 1989).

[21] As defined by the Contract.

9

shall be named as Additional Insured on those policies (except Workers Compensation coverage), and coverage under all such policies shall be primary to any other coverage in favor of the Company Group. With respect to Comprehensive General Liability ("CGL") Insurance and Excess Umbrella which is in excess of the CGL coverage, Company [Conn] and Contractor agree that Company [Conn] will pay to Contractor's insurers the premium required by Contractor's insurers for extending Contractor's insurance policies to cover Company Group by naming Company Group as additional insured, waiving subrogation against Company Group, and being primary with respect to any other coverage in favor of Company Group for liability assumed by Contractor under this Agreement. Contractor [BJ Services] will arrange to have Company billed for the premium required by Contractor's insurers, and the additional premium for such Additional Assured status shall be paid by Company based on an invoice provided by Contractor, which shall be over and above the agreed upon rates and shall not be consideration to Contractor. Contractor will notify Company in writing prior to execution of this Agreement if such premium will be in excess of $500.00. Contractor warrants that such amount constitutes the full cost of extending such insurance protection to Company Group.[22]

The parties stipulated that, contrary to the requirements of the MSA between Conn and BJ Services, BJ Services did not obtain insurance coverage for defendant, Ed Thompson or Excalibur, as members of the Company Group.[23] Defendants contend that the plain language of the MSA required BJ Services to obtain coverage for these defendants, and forward the invoice to Conn for payment. BJ Services would have incurred no cost to itself had it complied with the contract. Thus, Defendants maintain that BJ Services owes indemnity and reimbursement for defense costs associated with the suit brought by BJ Services's employee as well as defense costs for the instant litigation because they are part of the Company Group as defined by the MSA, and moreover, BJ Services was obligated by the MSA to procure insurance coverage for Thompson/Excalibur as members of the Company Group.

---

[22] Defendant's exhibit 1, Schedule I to exhibit "B".

[23] Stipulation No. 8.

10

First, the Court must determine if Defendants, Thompson and/or Excalibur are part of the Company Group as defined in the MSA. Defendants rely on the following contract language:

> I. **Indemnification and Release:**
> * * *
> (b) Contractor [BJ Services] agrees to PROTECT, DEFEND, INDEMNIFY and HOLDER HARMLESS Company [Conn], and its parent, subsidiary, related and affiliated corporations(s), limited liability companies, or other entities, and its and all of their co-owners, co-lessees, partners, co-venturers, joint venturers, and ***contractors and subcontractors*** (with exception of Contractor and its subcontractors), and the officers, directors, employees, agents, assigns, representatives, managers, consultants, and insurers of all of the foregoing (individually and collectively referred to as "Company Group"), (AND Contractor HEREBY RELEASES EACH MEMBER OF THE COMPANY GROUP) from and against any and all claims, losses, damages and liabilities of any kind whatsoever, (including but not limited to reasonable attorneys' fees and other costs and expenses, without limit and without regard to the cause or causes thereof) (hereafter "Claims") directly or indirectly arising out of or in connection with illness, personal injury, bodily injury, death or damage to property of Contractor or its subcontractors or its or their employees or invitees, which in any way, directly or indirectly, arise out of or are related to this Agreement (including, without limitation, the performance ro subject matter of this Agreement), including any such Claims resulting from ingress, egress, loading or unloading of personnel or cargo and INCLUDING ANY SUCH CLAIMS CAUSED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE, FAULT OR STRICT LIABILITY OF ANY OF THE COMPANY GROUP, OR ANY CAUSE WHATSOEVER, WITH TH SOLE EXCEPTION THAT NO MEMBER OF THE COMPANY GROUP SHALL BE ENTITLED TO INDEMNITY OR DEFENSE FOR ITS OWN ACTS OR OMISSIONS CONSTITUTING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.[24]

Thus, Defendants argue that the above provision includes Ed Thompson and Excalibur in the Company Group as Conn's subcontractors. BJ Services maintains that Defendants, Thompson and

---

[24] Defendants' exhibit 1, MSA, exhibit A (italics and bold emphasis added).

Excalibur cannot be part of the Company Group because they have not complied with another provision of the MSA. BJ Services relies on the following provision which provides that:

> [t]o the extent Company's [Conn] other Contractors [potentially Thompson and Excalibur] agree to a substantially similar indemnification obligation and Contractor Group is entitled to and does receive the benefits thereof, the parties agree the term Company Group shall include Company and Company Other Contractors.[25]

BJ Services further remarks that there was no MSA or contract between Conn and Excalibur or Conn and Thompson or BJ Services and Excalibur or BJ Services and Thompson or between Excalibur and Thompson.[26] BJ Services maintains that this provision precludes Thompson and its insurer, Lexington, from defense, indemnity and additional insured status because in order to become a member of the Contractor Group, Lexington must prove that Thompson had a contract which obligated Excalibur and/or Thompson to defend and indemnify Conn or Conn's other contractors. In other words Conn and its contractors are included in the definition of "Company Group" if and only if those contractors have a written indemnification agreement with Conn. Based on the Stipulations, Defendants had no contract or MSA with Conn.

Defendants point out that BJ Services has intentionally omitted the latter portion of the paragraph which if read and interpreted in its entirety would explain that the paragraph applies to a specific situation which would favor Conn as the general contractor. In other words, the paragraph does not obligate Thompson and Excalibur to have a reciprocal indemnity agreement in order to be included in the Company Group. The omitted, latter part of the MSA paragraph is as follows:

> As respects Company's obligation to indemnify Contractor Group as a result of the

---

[25] Defendants' exhibit I, MSA exhibit A, ¶ I(h).

[26] See aforementioned Stipulations.

inclusion of Company's Other Contractor's in the definition of Company Group, Company's obligations shall only apply to the extent that such Company's other Contractor is contractually obligated to, and actually does indemnify Company or Contractor Group, such that Company's indemnity obligation to Contractor Group under this provision is effectively extinguished and actually replaced by the indemnity of such Company's Other Contractor.[27]

Defendants submit that subparagraph 1(b) provides a general definition of the concept of "Company Group" whereas subparagraph 1(h) provides an exception to that definition, suggesting that the purpose of subparagraph 1(h) is for Conn to shield itself from indemnity where another of its contractors also has an indemnity contract with Conn. Thus, Defendants maintain that subparagraph 1(h) has no application to, and no impact on BJ Services' indemnity obligations toward Company Group members. It provides no benefit to BJ Services and only states Conn's intention to escape its indemnity obligation should another contractor elect to sign the MSA prepared by Conn. Thus, subparagraph 1(h) has no relevance to Excalibur or Ed Thompson because neither of these defendants agreed to enter into Conn's written MSA.

Defendants further argue that the phrase "to the extent" must be interpreted as "if" citing *John Hancock Mutual Life Ins. Co. v. Harris Trust and Savings Bank.*[28] Thus, subparagraph 1(h) is a contingency and does not constitute or change the general definition of the term "Company Group" found in subparagraph 1(b).

The Court agrees and finds subparagraph 1(h) becomes effective only if there is a reciprocal indemnity agreement between Conn and Excalibur/Thompson. Thus, under the factual circumstances of this case, because neither Excalibur nor Thompson had an agreement or contract

---

[27] Defendants' exhibit I, MSA exhibit A, ¶ I(h).

[28] 510 U.S. 86 (1993).

with Conn, subparagraph 1(h) is irrelevant and Excalibur/Thompson are included in the Company Group.

The Court finds that BJ Services was obligated to provide insurance coverage to Conn's subcontractors, yet failed to do so.[29] The cost of the premiums of the additional insureds was to be passed on to Conn's. Thus, the indemnity provision falls within the exception created by *Patterson/Marcel* and the indemnity provisions are valid and enforceable.

*Does the settlement by Lexington, on behalf of Thompson, preclude indemnity?*

Unfortunately, our analysis is not yet complete; BJ Services maintains that Excalibur/Thompson is not entitled to defense and indemnity because the parties settled with Lemelle without a finding of negligence. BJ Services relies on *Meloy v. Conoco, Inc.*[30] wherein the court recognized that where there is any negligence or fault on the part of the indemnitee, the LOIA nullifies the defense and/or indemnification provision in an agreement. BJ Services posits that because Lexington settled on behalf of Thompson with Lemelle prior to a determination of the fault or neglect of Thompson, Lexington/Thompson is precluded from recovering any amount it paid on behalf of Thompson.

BJ Services cites *Tanksley v. Gulf Oil Corp.*,[31] wherein the Court held that the platform owner's [Chevron's] settlement with an injured oil field worker foreclosed a determination of the platform owner's fault or negligence, and absent such a finding, or a legal bar preventing such finding, the LOIA nullified the indemnity agreement between platform owner and the employer of

---

[29] Stipulation No. 8.

[30] 504 So.2d 833 (La.1987).

[31] 848 F.2d 515 (5th Cir. 1988).

the injured worker. In its opinion, the court made the following analysis:

> . . .[T]he Louisiana Supreme Court made the determination of fault by the court central to the application of the anti-indemnity bar of the Oilfield Indemnity Act. . .
>
> In its response to our certified questions the Louisiana Supreme Court recognized the limiting effect of the Oilfield Indemnity Act on indemnity agreements between oil companies and oilfield contractors.
>
> The Act only prohibits indemnity for cost of defense where there is "negligence or fault (strict liability) on the part of the indemnitee." The Act does not apply where the indemnitee is not negligent or at fault. An agreement providing for cost of defense in the event of a meritless suit against the indemnitee is outside the scope of the Act. Accordingly, the indemnitor's obligation for the cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless. Whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits. If it is established at trial there is no "negligence or fault (strict liability) on the part of the indemnitee," the Act does not prohibit indemnification for cost of defense.
>
> The instruction by the Louisiana Supreme Court is manifestly clear. "Whether an oil company (indemnitee) is free from fault and thus outside the scope of the Act can only be determined after trial on the merits. It is in the practical application that difficulties arise, . . . , in which there could not be a trial court determination of fault, and the case here presented, in which there could have been a fault determination but where none will be forthcoming because of the settlement.[32]

In *Tanksley,* Chevron sought to have the court remand the matter to the district court for a determination of its fault or negligence as a predicate for the decision whether its indemnity agreement was abrogated by the LOIA. The Court declined holding that a trial on the merits, prior to the settlement, was legally possible but foreclosed by Chevron's settlement with Tanksley.[33]

---

[32] *Tanksley,* 848 F.2d at 516-517.

[33] Had a trial on the merits been legally impossible, for instance the Longshore and Harbor Workers' Act proscribed any judicial inquiry of fault of a borrowed employee's employer, the LOIA would not annul the indemnity provision and the employer would be entitled to recover its cost of defense.

Lexington posits that the settlement does not preclude defense and indemnity by BJ Services because it is Lexington's position that the contract in question is maritime in nature, thus the *Meloy* decision is not applicable. The Court concludes as set forth above that the contract in question is not maritime in nature, thus the LOIA is applicable. Therefore, because Lexington, on behalf of Thompson, settled without a determination of fault, Lexington is precluded from seeking indemnity from BJ Services.

## **CONCLUSION**

Based on the foregoing, the Court finds in favor of BJ Services and against Thompson/Lexington based on our analysis that maritime law does not apply and Lexington is precluded from seeking indemnity from BJ Services because of the settlement made by and between Mr. Lemelle and Lexington.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 14th day of May, 2010.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE